**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| AUSTIN JACOB GAGNE,<br><br>Plaintiff,<br><br>vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC,<br><br>Defendants. | Civil Case No.: 2:26-cv-_____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Austin Jacob Gagne ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); Trans Union, LLC ("Trans Union") (collectively, "Defendants"); and states as follows:

## INTRODUCTION

1.      This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## PARTIES

2.      Plaintiff Austin Jacob Gagne ("Plaintiff") resides in Biddeford, Maine, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

3.      Defendant Equifax Information Services, LLC ("Equifax") is a consumer reporting agency that maintains its principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax can be served through its registered agent, Corporation Service Company, at 45 Memorial Circle, Augusta, Maine 04330.

1

4. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency that maintains its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian can be served through its registered agent, C T Corporation System, at 3 Chase Avenue, Augusta, Maine 04330.

5. Defendant Trans Union, LLC ("Trans Union") is a consumer reporting agency that maintains its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Corporation Service Company, at 45 Memorial Circle, Augusta, Maine 04330.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## FACTS

**Plaintiff Authorized a Soft Inquiry, but the Broker Conducted an Unauthorized Hard Credit Inquiry**

8. In the summer of 2025, Plaintiff began efforts to purchase a home and engaged a mortgage broker to assist in determining his financing options.

9. On or about August 1, 2025, Plaintiff sought to determine the amount of financing for which he might qualify. He was informed that the broker would perform a soft credit inquiry.

10. Contrary to this representation, the broker instead conducted a hard credit inquiry on Plaintiff's credit file.

**Plaintiff Discovered a Hard Credit Inquiry Instead of the Authorized Soft Inquiry**

11. Thereafter, Plaintiff discovered the hard inquiry while reviewing his credit reports through Credit Karma.

12.     Specifically, Plaintiff discovered a hard inquiry by XACTUS-AVANTUS/TOTAL M on August 1, 2025, appearing in his credit reports.

13.     Plaintiff was disappointed and concerned upon learning that a hard inquiry had been placed on his credit report despite being informed that only a soft inquiry would be conducted.

14.     To address the issue, Plaintiff contacted the broker via text message. During this exchange, the broker acknowledged that the hard inquiry had been made in error and indicated that they would attempt to correct the mistake.

**Plaintiff's Disputes to Equifax and Equifax's Unreasonable Dispute Reinvestigation**

15.     On September 24, 2025, concerned about the inaccurate hard inquiry on his credit report, Plaintiff sent a dispute to Defendant Equifax.

16.     Plaintiff explained that the hard inquiry was unauthorized and inaccurate, as he had been informed that only a soft inquiry would be conducted, and that this improper inquiry had a negative impact on his credit score.

17.     Plaintiff requested that Equifax reinvestigate the disputed information and correct the reporting.

18.     On October 4, 2025, Equifax received Plaintiff's dispute.

19.     By letter dated October 6, 2025, Equifax responded, stating that "Inquiries are a factual record of file access and will remain on the Equifax credit file two years from the reported date of inquiry."

20.     As a result, on November 14, 2025, Plaintiff submitted a second dispute to Equifax.

21.     On November 18, 2025, Equifax received Plaintiff's second dispute.

22.     Equifax responded by letter dated November 22, 2025, reiterating again that inquiries are factual records of file access and would remain on the report for two years.

23. In early January 2026, Plaintiff captured a screenshot of his Equifax credit report and observed that the inquiry in question remained listed, although the creditor's name was not displayed due to a reporting glitch.

24. Plaintiff also verified the inquiry via Credit Karma and confirmed that it continued to appear on his credit report.

25. Plaintiff obtained a copy of his Equifax credit report dated January 13, 2026, which continued to reflect the inquiry as a hard inquiry.

26. Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

27. Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's September 2025 and November 2025 disputes.

28. Thereafter, Defendant Equifax failed to correct or delete the inaccurate hard inquiry appearing in Plaintiff's credit file.

29. Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered in September 2025 and November 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Plaintiff's Disputes to Experian and Experian's Unreasonable Dispute Reinvestigation**

30. On September 24, 2025, concerned about the inaccurate hard inquiry on his credit report, Plaintiff sent a dispute to Defendant Experian.

31. Plaintiff explained that the hard inquiry was unauthorized and inaccurate, as he had been informed that only a soft inquiry would be conducted, and that this improper inquiry had a negative impact on his credit score.

32.    Plaintiff requested that Experian reinvestigate the disputed information and correct the reporting.

33.    On October 2, 2025, Experian received Plaintiff's dispute.

34.    Despite receipt of the dispute, Experian failed to provide Plaintiff with any response or resolution.

35.    As a result, on November 14, 2025, Plaintiff submitted a second dispute to Experian.

36.    On November 17, 2025, Experian received Plaintiff's second dispute.

37.    On November 28, 2025, Experian indicated through its online platform that the disputed inquiry was not listed on Plaintiff's credit report. However, when Plaintiff accessed his credit report, he observed that the inquiry remained and continued to be reported in the same manner.

38.    In early January 2026, Plaintiff captured a screenshot of his Experian credit report and observed that the inquiry in question remained.

39.    Thereafter, Plaintiff obtained a copy of his Experian credit report dated January 13, 2026, which continued to reflect the inquiry as a hard inquiry.

40.    Upon information and belief, Defendant Experian failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

41.    Upon information and belief, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's September 2025 and November 2025 disputes.

42.    Thereafter, Defendant Experian failed to correct or delete the inaccurate hard inquiry appearing in Plaintiff's credit file.

43. Experian failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered in September 2025 and November 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Plaintiff's Disputes to Trans Union and Trans Union's Unreasonable Dispute Reinvestigation**

44. On September 24, 2025, concerned about the inaccurate hard inquiry on his credit report, Plaintiff sent a dispute to Defendant Trans Union.

45. Plaintiff explained that the hard inquiry was unauthorized and inaccurate, as he had been informed that only a soft inquiry would be conducted, and that this improper inquiry had a negative impact on his credit score.

46. Plaintiff requested that Trans Union reinvestigate the disputed information and correct the reporting.

47. On September 27, 2025, Trans Union received Plaintiff's dispute.

48. On September 29, 2025, Trans Union responded that the request was neither properly authorized by him nor by any authorized third party.

49. As a result, on October 17, 2025, Plaintiff sent a second dispute to Trans Union.

50. On October 28, 2025, Trans Union received Plaintiff's second dispute.

51. Trans Union responded to Plaintiff's dispute by letter dated October 31, 2025, stating that if the inquiry had been made without a valid reason, Plaintiff should contact the company that accessed his credit report.

52. Thus, on November 14, 2025, Plaintiff sent a third dispute to Trans Union.

53. On November 17, 2025, Trans Union received Plaintiff's third dispute.

54. Despite receipt of the dispute, Trans Union failed to provide Plaintiff with any response or resolution.

55. In early January 2026, Plaintiff captured a screenshot of his Trans Union credit report and observed that the inquiry in question remained.

56. Thereafter, Plaintiff obtained a copy of his Trans Union credit report dated January 13, 2026, which continued to reflect the inquiry as a hard inquiry.

57. Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

58. Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's September 2025, October 2025, and November 2025 disputes.

59. Thereafter, Defendant Trans Union failed to correct or delete the inaccurate hard inquiry appearing in Plaintiff's credit file.

60. Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered in September 2025, October 2025, and November 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Plaintiff's Damages**

61. As a result of the CRA Defendants' inaccurate reporting, Plaintiff refrained from applying for additional credit following the unauthorized hard inquiry, as he lacked confidence to do so due to the resulting reduction in his credit score, which declined by approximately 15 points. Plaintiff reasonably believed that, had his score not been affected, he might have qualified for approval with more favorable terms.

62. On or about February 20, 2026, Plaintiff submitted an online mortgage application with Wells Fargo for a home in the approximate amount of $170,000. Wells Fargo informed

Plaintiff that, while he was approved for a mortgage, his credit score at the time of the inquiry, reported as 730, was slightly below the threshold required for optimal interest rates and larger loan amounts. Plaintiff was ultimately approved for a $97,000 mortgage loan, with Wells Fargo noting in official correspondence that the loan terms were partially influenced by the number of inquiries reflected on his credit report.

63.    Plaintiff reviewed his credit reports from Equifax, TransUnion, and Experian and confirmed that no inquiry from Wells Fargo appeared on these reports. His scores were 725 with Equifax and TransUnion, and 759 with Experian.

64.    As a first-time homebuyer, this mortgage application represented a significant milestone for Plaintiff. Prior to this, Plaintiff had maintained a single credit card account in excellent standing, demonstrating diligence and responsibility in managing his credit. He had carefully prepared his credit profile to secure the most favorable mortgage terms. The unauthorized inquiry and its impact on his credit score disrupted this process, causing Plaintiff substantial emotional distress, anxiety, and frustration.

65.    Plaintiff experienced feelings of powerlessness and overwhelm, as the situation was entirely beyond his control despite his proactive efforts to maintain a strong credit history. The interference with what should have been a smooth and exciting milestone, his first mortgage application, has caused ongoing emotional hardship and tangible financial consequences.

66.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

67. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent, and in utter disregard for federal law and the rights of Plaintiff herein.

68. As a standard practice, the CRA Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

69. Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendants' violations of the FCRA were willful.

70. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## COUNT I

### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Against Defendants Equifax, Experian, and Trans Union)**

71. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

72.     Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

73.     Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

74.     Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**

**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Against Defendants Equifax, Experian, and Trans Union)**

75.     Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

76.     Defendants violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigation(s) of Plaintiff's dispute(s) after Plaintiff notified them that, contrary to what was reported in Plaintiff's file, and by failing to maintain reasonable procedures to investigate Plaintiff's dispute(s).

77.     Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

78.     Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 8, 2026

Respectfully Submitted,

/s/      John Z. Steed
John Z. Steed, Esq. #5399
Island Justice, LLC
P.O. Box 771
Stonington, ME 04681
(207) 200-7077
john@islandjusticelaw.com

/s/ Atid Malka
Atid Malka (pro hac vice) Georgia Bar No. 705109
Consumer Attorneys
2800 N Druid Hills Rd. NE
Building A, Suite D
Atlanta, GA 30329
amalka@consumerattorneys.com

*Attorneys for Plaintiff*
*Austin Jacob Gagne*

11